REDMANN, Chief Judge,
dissenting.
The judgment appealed from is not justified by the record.
Plaintiff introduced titles to his French Quarter residence that, at least since 1953, purport to transfer to his then and later ancestors in title and to himself a lot whose straightline boundary with defendant’s lot coincides with a fence for more than half the boundary’s distance and then with a line slightly on defendant’s side of that fence until four inches into the eight-inch side wall of a shallow building on the rear of defendant’s lot. Plaintiff also enjoys the legal presumption that that wall at the rear of his side boundary is a common wall, La.C.C. 677,[1] that is, a wall resting half (four inches, in this case) on each side of the boundary line, C.C. 675.
Defendant introduced not a single title to her lot from the last 150 years — not a sale, not even a judgment of possession. Moreover, the late 18th and early 19th century titles to defendant’s lot that the commissioner ordered for the record do not conflict with plaintiff’s title.
The trial court erred both in ignoring the effect of acquisitive prescription of ten years with just title upon any arguable defect in plaintiff’s title, and, independent of that error, in ignoring the presumption of common wall between plaintiff’s and defendant’s properties while applying that very presumption to one of two common walls (probably the wrong one) along a boundary between third persons. That doubtful presumption was the basis for an unnecessary starting point to resurvey the common author’s original boundary — unnecessary because only the boundary between plaintiff and defendant is at issue, and that boundary is established by plaintiff’s titles and possession, buttressed by the presumption that the wall between them is a common wall, and not contradicted by any title of defendant.
All titles to plaintiff’s land, from the common author up until plaintiff’s acquisition in 1971 (except the 1947 sale by Angelo Brocato, Jr. to Michelina Brocato), are in the record. Those titles, at least since 1953, describe the property on the basis of a 1946 survey that places the boundary where plaintiff claims it historically was and currently belongs.
That 1946 survey by Horatio Gilbert shows that, for more than half the distance from street towards defendant’s rear building, the fence was on the side property line between plaintiff’s and defendant’s properties, thus to that extent giving plaintiff physical as well as theoretical-legal possession to the boundary shown by his title. That survey further shows that the remainder of that property line was on defendant’s side of the fence and then within defendant’s rear building’s side wall, to the extent of four inches at its rear: and plaintiff and his authors thus had possession even of those inches on defendant’s side of the fence by occupying "a part of the land *194 ... with the intention of possessing all that is included within the boundaries,” C.C. 3437 (1870). (Otherwise, one could never “possess” the land under a party wall used solely by the adjoining neighbor.)
Plaintiff and his authors, if their aboriginal title somehow did not extend to the 1946 survey line, would therefore have acquired up to that survey line by the ten-year acquisitive prescription with just title, unless (though only as to any part of plaintiffs title on defendant’s side of the fence) at the same time defendant and her authors by their physical possession up to the fence with title prevented plaintiff and his authors’ possession under art. 3437 from constituting a ten-year acquisitive prescriptive title.
There is in evidence a 1973 survey by Gilbert, Kelly & Coutourié that plaintiff’s appellate brief says was attached to defendant’s act of acquisition and that shows the fence and the outer edge of defendant’s rear building’s wall as the boundary line. But this suit was brought long before ten years after 1973, even if by title based on that survey, and there is no showing that defendant’s ancestors in title possessed under any similar title. The critical period is the ten years following 1953 (or perhaps 1947), and there is no evidence as to defendant’s ancestors’ titles at that time.
On this record, the proper conclusion is that, if plaintiff’s title was ever anything other than that shown on the 1946 survey by which his ancestors bought and possessed since at least 1953, their possession since 1953 under that title has made it their title. Plaintiff today owns to that boundary, irrespective of what an archeological historian might conclude about the original boundary, unless defendant had both possession and title in conflict with plaintiff’s title.
This matter should be remanded so that defendant can present her title. Unless her title conflicts with plaintiff’s, the judgment should be modified to fix the boundary as shown by the 1946 Gilbert survey.

. "Every wall which is a separation betwixt buildings as high as the upper part of the first story [or “up to the point of disjunction” ], or betwixt the yard and garden ..., shall be presumed to be in common, if there be no title, proof or mark to the contrary.”